IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADE INDUSTRY PENSION FUND and TIM D. MAITLAND *Plaintiffs* | * * * * * * * | |
| v. | * * | |
| MARRERO GLASS & METAL INC. and METRO GLASS & METAL PUBLIC WORKS *Defendants*. | * * * * * * * | Civil No. ELH-18-452 |

********

## MEMORANDUM

Plaintiffs International Painters and Allied Trade Industry Pension Fund ("Pension Fund") and Tim D. Maitland, in his official capacity as a fiduciary of the Pension Fund, filed suit against defendants Marrero Glass & Metal Inc. ("Marrero") and Metro Glass & Metal Public Works ("Metro"). ECF 1 ("Complaint"). Plaintiffs allege, *inter alia*, that the defendants failed to make payments owed to the Pension Fund pursuant to collective bargaining agreements. The Complaint is supported by several exhibits (ECF 1-2 to ECF 1-8) and contains five counts: "Contributions Under ERISA – Sum Certain" (Count I); "Contributions Under Contract – Sum Certain" (Count II); "Audit" (Count III); "Contributions Under ERISA [–] After Audit" (Count IV); and "Contributions Under Contract – After Audit" (Count V). *Id.* ¶¶ 18-38.

Defendants have filed a "Motion to Dismiss Complaint, or in the Alternative, Motion to Transfer Case," pursuant to Fed. R. Civ. P. 12(b)(7). ECF 12. It is supported by a memorandum of law (ECF 12-1) (collectively, the "Motion") and an exhibit. ECF 12-2. Plaintiffs oppose the

Motion (ECF 15) and have submitted an exhibit. ECF 15-1. Defendants have replied (ECF 17) and filed additional exhibits. ECF 17-1 to ECF 17-9.

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall transfer the case to the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1404, without consideration of the merits of the motion to dismiss.

### I. Factual Background

Marrero and Metro are union glass and metal companies incorporated in Pennsylvania. ECF 1, ¶¶ 9-10; ECF 12-1 at 1. Plaintiffs maintain that Marrero and Metro "constitute a single integrated business enterprise." ECF 1, ¶ 14. Marrero and Metro entered into "collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades" ("IUPAT"), among other union entities. *Id.* ¶ 11; ECF 12-1 at 1.

Pursuant to the Labor Contracts, the defendants agreed to monthly payments to the Pension Fund, a trust fund established under 29 U.S.C. § 186(c)(5). ECF 1, ¶¶ 4, 13. They also agreed to file monthly remittance reports and to produce books and records upon request. *Id.* ¶ 13. In the event of a breach of their contractual or statutory duties, the defendants also allegedly agreed to pay the Pension Fund liquidated damages, interest, and other costs expended to collect amounts owed as a consequence of the from the breach. *Id.*

Marrero allegedly failed to pay amounts due under these agreements from July 2016 to December 2017. ECF 1, ¶ 19. Plaintiffs assert that Marrero and Metro now owe the pension fund $59,314.16 as a consequence. *Id.*; *see also* ECF 1-7 (calculating amount owed); ECF 1-8 (same).

Similar matters were disputed in two cases filed in the District Court for the Eastern District of Pennsylvania on June 20, 2017: *Metro Glass & Metal Company v. International Union of*

*Painters & Allied Trades District Council No. 21 Health & Welfare Fund,* 2:17-cv-02755-AB (E.D. Pa. June 20, 2017) (hereinafter "*Metro*"), and *International Union of Painters & Allied Trades District Council No. 21 Health & Welfare Fund v. Metro Glass & Metal Company*, 2:17-cv-02757-AB (E.D. Pa. June 20, 2017) (hereinafter "*IUPAT*") (collectively, the "Pennsylvania Litigation").[1]

In *Metro*, Marrero and Metro lodged contract and commercial tort claims against several union entities, including the Pension Fund. *Metro*, ECF 1. But, Marrero and Metro, among other litigants, stipulated to releasing the Pension Fund from the suit on July 26, 2017. *Id.*, ECF 17.

In *IUPAT*, several union entities sued Marrero and Metro for allegedly failing to make payments required by the collective bargaining agreements. *IUPAT*, ECF 1. The Pension Fund was not a party to this suit. *See id.* Nevertheless, the claims in *IUPAT* arose from many of the same facts at issue in the instant matter. *Compare IUPAT*, ECF 1, *with* ECF 1.

*Metro* and *IUPAT* were consolidated on November 8, 2017. *Id.*, ECF 15. The cases were later settled, with the parties filing a stipulation of dismissal with prejudice on January 30, 2018. ECF 12-2; *see also Metro*, ECF 41; *IUPAT*, ECF 18. By so doing, the union entities still in the case released their claims against Marrero and Metro by operation of a Settlement Agreement. ECF 12-1 at 2. On February 14, 2018, the Pension Fund filed suit in this District. ECF 1.

---

[1] According to defendants, the following union entities were parties to the Pennsylvania Litigation: International Union Painters and Allied Trades District Council No. 21 Health and Welfare Fund, International Union Painters and Allied Trades District Council No. 21 Annuity Fund, International Union Painters and Allied Trades District Council No. 21 Vacation Fund, International Union Painters and Allied Trades District Council No. 21 Finishing Trades of the Mid-Atlantic Region, International Union of Painters and Allied Trades District Council No. 21 Scholarship Fund, International Union of Painters and Allied Trades District Council No. 21 Job Organization Program Trust Fund, Joseph Ashdale, Trustee of International Union Painters and Allied Trades District Council No. 21 Health and Welfare Fund, International Union Painters and Allied Trades District 21, and the International Union of Painters and Allied Trades. ECF 12-1 at 2 n.1.

Those claims arose from many of the same allegations at issue in this case. *Compare IUPAT*, ECF 1 *with* ECF 1.

## II. Discussion

Defendants move to transfer this case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). ECF 12-1 at 5-6. They contend that the transfer is proper from "the standpoint of judicial economy" so that the case may be consolidated with the Pennsylvania Litigation. ECF 12-1 at 5. Moreover, they assert that "the Eastern District of Pennsylvania will be a more convenient forum for the majority of parties and witnesses involved." ECF 17 at 4. Defendants note that "[m]ovants have no ties to Maryland – they have no offices or employees in Maryland and conduct no business in the state of Maryland." ECF 17 at 3.

The Pension Fund disagrees, contending that ERISA heavily favors the Pension Fund's choice of venue. ECF 15 at 8. Further, it argues that the interest of justice supports this Court retaining the case because Judge Anita B. Brody, who handled the Pennsylvania Litigation, has denied Marrero's motion for a temporary restraining order and preliminary injunction to declare the instant case improper or enforce the Settlement Agreement. ECF 15 at 10-11; *see also Metro*, ECF 45.

### A.

Section 1404(a) states, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Notably, § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To that end, it

helps "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Id.* (citation omitted). Ultimately, § 1404(a) "tempers the effects" of the plaintiff's choice of venue. *In re: Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

In a motion to transfer venue pursuant to § 1404(a), the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper. *See Costar Realty Info., Inc. v. Meissner*, 604 F.Supp.2d 757, 770 (D. Md. 2009); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). Ultimately, "[t]he decision whether to transfer is committed to the sound discretion of the trial court." *Mamani*, 547 F. Supp. 2d at 469; *see also In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

Based on the statutory language, the standard for a § 1404(a) transfer can be distilled, as follows: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D. Md. 2002). Thus, "[a] motion to transfer under § 1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see, e.g.*, *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *Lynch*, 237 F. Supp. 2d at 617.

**B.**

Under 28 U.S.C. § 1404(a), the "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *In re: Volkswagen*, 545 F.3d at 312 (internal quotations omitted). In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant. *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

Section 1391 of Title 28 of the United Sates Code governs "the venue of all civil actions" filed in federal district court. *Id.* § 1391(a). Under § 1391(b), venue exists in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In ERISA disputes, a suit "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" 29 U.S.C. § 1132(e)(2).

Defendants are Pennsylvania corporations that transact business and maintain offices in the state. ECF 1, ¶¶ 9-10. Therefore, personal jurisdiction is proper in Pennsylvania. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (bracket in *Daimler*) (citation omitted) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"). And, venue exists in the Eastern District of Pennsylvania, the proposed transferee venue.

Because this suit "might have been brought in the destination venue," *In re: Volkswagen*, 545 F.3d at 312, the Court must weigh several factors in considering the motion to transfer under

§ 404(a). As stated, these include: (1) the weight accorded to plaintiff's choice of venue; (2) the convenience of the witnesses; (3) the convenience of the parties; and (4) the interest of justice. *Plumbing Servs., Inc.*, 791 F.3d at 444.

1. **Plaintiff's Choice of Venue**

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g., Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table). Indeed, unless the balance of factors points "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *see Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *Mamani*, 547 F. Supp. 2d. at 469. This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (recognizing that a plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").

As indicated, a plaintiff's choice of forum "is ordinarily accorded considerable weight . . . ." *Lynch*, 237 F. Supp. 2d at 617. But, "that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Id.*; *see also Bannister v. Wal-Mart Stores E., L.P.*,

7

843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted); *Bd. of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007) (observing that the weight of plaintiff's choice of forum "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action").

The Pension Fund provides several reasons for preserving its choice of venue. It asserts that if it were "forced to litigate outside the district in which [it is] administered, [the Pension Fund] 'would be burdened with significant additional expense and managerial hardship.'" ECF 15 at 9. Additionally, the Pension Fund contends that if it is compelled to litigate in multiple circuits, the important interests of assuring "uniform interpretations of ERISA and plan rules" are undercut. ECF 15 at 9.

These arguments are not persuasive. *See Int'l Painters & Allied Trades Indus. Pension Fund v. A. Laugeni & Son, Inc.*, No. CIV.A. MJG-15-370, 2015 WL 4040610, at *2 (D. Md. June 30, 2015) (giving little credit to the Pension Fund's "general allegation that they would incur additional costs if the case were transferred"). The Pension Fund does not explain why it "would be burdened with significant additional expense and managerial hardship." ECF 15 (internal quotation omitted). The distance between the federal courthouse in Baltimore and the federal courthouse in Philadelphia is virtually insignificant. Moreover, plaintiff's counsel is based in Pennsylvania, not Maryland. *See* Docket; *see also Laugeni & Son*, 2015 WL 4040610, at *2 ("[T]he Court must note that none of Plaintiffs' counsel are based in Maryland, but are based in Philadelphia. Hence, there would appear to be a relatively minor increase, if any increase at all, of

8

the cost to Plaintiffs caused by a transfer to Connecticut."). Similarly, uniformity of interpretation undermines plaintiffs' argument for this Court to retain jurisdiction. As plaintiffs note, Judge Brody has twice decided motions related to the Settlement Agreement." ECF 15 at 10-11; *see also Metro*, ECF 45, ECF 47.

Finally, Maryland has little connection to the merits of the underlying dispute. To be sure, the Pension Fund is "administered from its offices in Hanover, Maryland." ECF 15 at 9. But, the disputed conduct, or lack thereof, underlying the Complaint (i.e., the delinquency of defendants) occurred in Pennsylvania, a fact that the Pension Fund does not dispute. ECF 1 at 5-8. Thus, the weight attached to the Pension Fund's choice of forum is "significantly lessened." *Lynch*, 237 F. Supp. 2d at 617.

### 2. Convenience of Witnesses

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000); *accord Mamani*, 547 F. Supp. 2d at 473; *see also* 15 C. WRIGHT & MILLER, FED. PRACTICE & PROCEDURE § 3851 (4th ed.) ("WRIGHT & MILLER") ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a).").

Defendants argue the convenience of the witnesses favors transfer. They assert that "the Eastern District of Pennsylvania will be a more convenient forum for the majority of the . . . witnesses involved." ECF 17 at 4. If this matter proceeds to trial, "[d]efendants intend to bring [IUPAT District Council No. 21 ("DC 21")] into this case." ECF 17 at 3. DC 21 provides Metro with workers. ECF 21-1. And, its witnesses, as well as defendants' foreseeable witnesses, "live in

the Philadelphia, Pennsylvania metropolitan area, not in Maryland." ECF 17 at 4. The Pension Fund did not respond to this argument.

As defendants point out without objection from the Pension Fund, the defendants and their employees are located in Pennsylvania and are potential witnesses. It is undoubtedly more convenient for these witnesses to travel to the Eastern District of Pennsylvania than to Baltimore.

As such, the convenience of the witnesses slightly favors transfer to the Eastern District of Pennsylvania.

### 3. Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." WRIGHT & MILLER § 3849. Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other." *Id.* at 216; *see Pinpoint IT Services, L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

Another judge in this District has considered § 1404(a) motions between the District of Maryland and the Eastern District of Pennsylvania. *See Lynch*, 237 F.Supp.2d 615. There, the court considered "the relative closeness of the transferor and transferee forums," and determined that "neither party would be greatly inconvenienced if the litigation were to continue in either jurisdiction. The time and distance for any of the parties to travel to either Baltimore or Philadelphia are essentially the same." *Id.* at 618. Moreover, as noted, plaintiffs' counsel is based in Pennsylvania. Therefore, the factor of convenience for the parties factor is in equipoise. It does not appear that it would be any more burdensome for plaintiff to litigate in the Eastern District of Pennsylvania than for defendants to litigate in Maryland.

#### 4.      Interest of Justice

The final factor for a court's consideration is whether transfer is in the interest of justice. This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." WRIGHT & MILLER § 3854. In assessing whether transfer would meet the interest of justice, additional factors that courts consider are the pendency of a related action, the court's familiarity with the applicable law, docket conditions, and the ability to join other parties. *See Bd. of Trustees v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1260 (E.D. Va.1988).

##### i.      The Pennsylvania Litigation

"A significant factor in considering the interests of justice is 'avoiding duplicative litigation in courts,' and the Court 'may appropriately consider the conservation of judicial resources and comprehensive disposition of litigation.'" *Mamani*, 547 F. Supp. 2d at 474 (quoting *Cronos*, 121 F. Supp. 2d at 466); *see also* WRIGHT & MILLER § 3854 ("[M]any courts have transferred to a forum in which other actions arising from the same transaction or event, or which were otherwise related, were pending."). When a similar case is already pending in another district, transfer of related claims is "favored" because it "may facilitate efficient pretrial proceedings and discovery" and also "because it avoids inconsistent results." *D2L Ltd.*, 671 F. Supp. 2d at 783. Moreover, there is "judicial economy in having the same judge consider the same underlying facts and issues only once[.]" *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 939 (E.D. Va. 2005). *See also D2L Ltd.*, 671 F. Supp. 2d at 783 ("The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum.").

That court is "intimately familiar with the relevant facts and allegations set forth in this case as well as the Settlement Agreement that was entered[.]" ECF 12-1 at 5. Indeed, this case grows out of the same facts as the Pennsylvania Litigation and arguably turns on the Pennsylvania

Litigation itself. "Where a party has previously litigated claims involving certain issues in one forum, "a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable." *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 814-15 (E.D. Va. 2001) (quoting *Wheeling-Pittsburgh Steel Corp. v. U.S. EPA*, 1999 WL 111459, *4 (E.D. Pa.1999); *see also Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. 1996) (favoring transfer where parties and issues are similar and another court is familiar with the case). Because the Eastern District of Pennsylvania has invested substantial time and energy to become familiar with the facts of this case, transfer would promote judicial economy. *See Teknekron Software Systems, Inc. v. Cornell University*, 1993 WL 215024, *8 (N.D.Cal.1993).

This factor favors transferring the case to the Eastern District of Pennsylvania.

### ii. Docket Conditions

"Another element relevant to the interest of justice is a comparison of the docket conditions in the two courts." WRIGHT & MILLER § 3854. In considering this factor, "'the real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (alteration omitted) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). Generally, this factor does not command substantial weight in considering whether to transfer a case. *See, e.g.*, *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 793 (E.D. Va. 2007).

Transfer will allow for the speedier resolution of this case because the case load in the Eastern District of Pennsylvania is lighter than in Maryland. During the 12-month period ending March 31, 2018, the median time to trial was 32.6 months in the District of Maryland, but was

only 21.5 months in the Eastern District of Pennsylvania. Federal Judicial Caseload Statistics, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf. Although this factor does not command great weight, it favors transfer.

### III. Conclusion

The balance of factors strongly supports the transfer of this case to the Eastern District of Pennsylvania. For the foregoing reasons, I shall grant the motion to transfer.

An Order follows.

Date: February 1, 2019

/s/
Ellen L. Hollander
United States District Judge